UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-80431-CIV-MIDDLEBROOKS/MCCABE

WILMA SILVA,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying the applications of Plaintiff Wilma Silva for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, which was referred to the undersigned by United States District Judge Donald M. Middlebrooks (DE 1, 6). Plaintiff presents three issues for review:

1. Whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff's hearing impairments to be "nonsevere."

2. Whether the ALJ erred in finding Plaintiff's mental impairments to be "nonsevere."

3. Whether the former Acting Commissioner of the Social Security Administration ("SSA"), Nancy Berryhill, violated the appointments clause of the United States Constitution by appointing the ALJ who decided Plaintiff's case at a point in time when she no longer had authority to make such appointments, pursuant to the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3346(a).

Plaintiff has timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for judicial review. After careful consideration of the administrative record and the parties' briefs, the undersigned **RECOMMENDS** that the Commissioner's final decision be **VACATED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**I.      BACKGROUND**

On November 8, 2013, Plaintiff filed applications for DIB and SSI, with a claimed disability onset date of October 1, 2013 (R. 17, 147-50, 153-54).[1] After the SSA denied the applications at the lower levels, Plaintiff requested an administrative hearing, which took place on May 10, 2016 (R. 30-56). Following the hearing, the ALJ issued an unfavorable decision (R. 17-25). On September 6, 2017, the SSA Appeals Council denied Plaintiff's request for review (R. 1-3).

Thereafter, on August 14, 2018, this Court granted a joint motion to remand Plaintiff's case for further proceedings (R. 533-34, 537). On remand, the ALJ conducted another hearing on July 14, 2021, during which, Plaintiff and a vocational expert ("VE") testified (R. 538-39, 540-42). The hearing continued to a second session on September 2, 2021, with Plaintiff, a different VE, and a medical expert offering testimony (R. 430-75).

On November 19, 2021, the ALJ issued an unfavorable decision, once again finding Plaintiff not disabled (R. 404-21). The ALJ's decision analyzed Plaintiff's case following the five-step process set forth in 20 C.F.R. §§ 404.1520(a)(4)(i-v) and 416.920(a)(4)(i-v). *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 852 (11th Cir. 2018) (explaining how the ALJ engages in the five-step process).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2013 (R. 407). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: spondylosis in the lumbar spine, asthma, and migraine headaches (R. 407). The ALJ found Plaintiff's bilateral hearing loss and mental impairments to be "nonsevere" (R. 407-09).

---

[1] The record on appeal is located at docket entry 11.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 412). Next, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that:

- Plaintiff can occasionally stoop, kneel and crouch;
- Plaintiff can never crawl;
- Plaintiff must avoid concentrated exposure to concentrated chemicals and pollutants; and
- Plaintiff must avoid exposure to hazards such as unprotected heights or with hazardous machinery.

(R. 413). The ALJ made no accommodation in the RFC for hearing loss or mental impairments, whether severe or nonsevere (R. 417-18).

At step four, the ALJ found that Plaintiff could still perform her past relevant work, generally and as actually performed, as a "general office clerk" (R. 420). As a result, the ALJ found Plaintiff not disabled (R. 421).

This appeal followed pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (cleaned up). A reviewing court must regard the Commissioner's findings of fact as conclusive so long as they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence is … more than a scintilla … and it must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

A reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir.

2004) (cleaned up). So long as substantial evidence supports the Commissioner's decision, and the Commissioner followed proper legal standards, this Court must affirm, even if the Court would have reached a contrary result as finder of fact, and even if the Court finds that the evidence preponderates against the Commissioner's decision. *See Winschel*, 631 F.3d at 1178; *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### III. DISCUSSION

Plaintiff assigns error on three grounds: (1) the ALJ erred in finding Plaintiff's bilateral hearing loss to be "nonsevere"; (2) the ALJ erred in finding Plaintiff's mental impairments to be "nonsevere"; and (3) former Acting Commissioner Berryhill violated the appointments clause by appointing the ALJ who decided Plaintiff's case at a point in time when she no longer had authority to do so, pursuant to the FVRA, 5 U.S.C. § 3346(a). The Court will address each argument in turn.

#### A. Hearing Impairment

Plaintiff first argues the ALJ erred at step two of the five-step analysis by not deeming her bilateral hearing loss to be a "severe" impairment. At step two of the sequential analysis, the ALJ must determine whether a claimant has any "severe" impairments, defined as "an impairment or combination thereof that significantly limits the claimant's physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a); 20 C.F.R. § 416.922. "Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b)(1-6).

As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "Only claims based upon the most trivial impairments may be rejected," and an impairment must be deemed "severe" unless the abnormality is "so slight" and its effect "so minimal" that it would "clearly not be expected to interfere with the individual's ability to work." *Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 970 (11th Cir. 2013).

Notably, however, the finding of *any* severe impairment is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Step two acts as a filter designed to screen-out applicants whose impairments do not support *any* claim for relief. *See Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir.1987).

Here, the ALJ found several severe impairments at step two, including spondylosis in the lumbar spine, asthma, and migraine headaches (R. 407). Having found these severe impairments, the ALJ proceeded to the next step of the five-step analysis. Accordingly, Plaintiff suffered no harm stemming from this alleged error. *See, e.g.*, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013); *Heatly*, 382 F. App'x at 824-25. Either way, the ALJ would have proceeded to the next step. To the extent Plaintiff assigns error to the ALJ's failure to deem her hearing impairment to be "severe" at step two, therefore, the Court finds such error to be harmless.

This, however, does not end the inquiry. The ALJ must consider all impairments – severe and nonsevere – in performing the latter steps of the sequential evaluation. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). In particular, in making the RFC determination, the ALJ must consider all of the record evidence, including evidence of severe and

5

nonsevere impairments. *See Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014) ("[B]eyond the second step, the ALJ must consider the entirety of the Plaintiff's limitations, regardless of whether they are individually disabling."); *Hanna v. Astrue*, 395 F. App'x 634, 635 (11th Cir. 2010) ("In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments.").

Here, the ALJ failed to incorporate Plaintiff's hearing loss, whether deemed severe or nonsevere, as part of the RFC (R. 412). The ALJ expressly addressed several of the medical opinions regarding Plaintiff's hearing loss in his written discussion of the RFC, but the ALJ decided to give "little evidentiary consideration" to any of these opinions "in the formulation of claimant's [RFC]" (R. 417-18). In support, the ALJ cited, inter alia, his earlier finding that Plaintiff's hearing loss posed a "nonsevere" impairment (R. 417-18).

After careful review, the Court finds the ALJ committed error by failing to incorporate or accommodate *some* degree of hearing loss as part of the RFC. The ALJ's failure to do so lacks substantial support in the record. Four factors compel this conclusion.

1. **The ALJ's In-Person Observations During the Administrative Hearing**

First, Plaintiff's hearing loss presented an observable problem during the administrative hearing. The record shows Plaintiff repeatedly misunderstood what was being said and failed to recognize when other people were speaking. Multiple participants commented on this problem during the course of the hearing. *See, e.g.*, R. 484 (when ALJ recognizes Plaintiff's hearing problem, counsel states to the ALJ, "I've got the same issue in discussing this matter … with [Plaintiff], and I do ask for the Court's indulgence and the patience in dealing with [Plaintiff], and I've had the same issue [communicating with Plaintiff]"); R. 484 (when Plaintiff has difficulty hearing, the ALJ requests that counsel take over because counsel might have "better luck" communicating with Plaintiff); R. 493 (after counsel instructs Plaintiff to put herself on mute, ALJ

6

wonders how they are going to communicate to her when she needs to take herself off mute).

In fact, the ALJ's own contemporaneous perceptions of Plaintiff led him to observe that Plaintiff would not be able perform work as a "receptionist." *See, e.g.*, R. 496 (ALJ stated, "I did reflect talking to her, and it did seem that she has some substantial problems listening"); R. 500 (ALJ stated, "the hearing loss is certainly important"); R. 501 (ALJ stated, "I don't think she could be a receptionist"); R. 503 (ALJ stated, "Counsel, the hearing loss, I'm willing to give you that she can't be a receptionist. I'll give you that…. I think that whatever her hearing problem is to stop her from being an effective receptionist. So you've got that.").

The record shows that Plaintiff's past relevant work included receptionist duties. The administrative hearing took place over two sessions, with two different VE's testifying. The first VE described Plaintiff's past relevant work as "receptionist," defined by Dictionary of Occupational Titles (DOT) § 237.367-010 (R. 493). The first VE opined that a person can perform this job so long as they can "hear normal conversation, normal voices" (R. 495). The ALJ then asked, "If a person has had to, during the course of a conversation, had once or twice asked the person to repeat a word, like say could you please repeat what you said. Could you still be a receptionist?" (R. 496). The VE answered, "I don't believe so. I think you need better hearing than that. A lot of lost information, a lot of frustration from people around that person" (R. 496).

The second VE offered a slightly different opinion of the same job, describing Plaintiff's past relevant work as "general office clerk," defined by DOT § 209.562-010 (R. 470). The DOT definition of this position confirms that a general office clerk, among other duties, "answers telephones." DOT § 209.562-010. At the hearing, the second VE also confirmed this position requires the use of telephones (R. 472). Likewise, Plaintiff herself confirmed that her past job required her to answer the telephone (R. 38).

7

Despite this, the RFC, as formulated by the ALJ, made no accommodations for any degree of hearing loss or ability to use the telephone (R. 413). Thereafter, as the ALJ proceeded through the sequential analysis, he ultimately concluded that, based on the RFC, Plaintiff could still perform her past relevant work as a "general office clerk as it is generally performed and was actually performed" (R. 420). This necessarily included answering the telephone and performing receptionist-like duties – something the ALJ's in-person, contemporaneous observations led him to conclude Plaintiff could no longer do (R. 501-03). For this reason, the Court finds the RFC determination lacks substantial support in the record.

### 2. Relevant Medical Opinions & Observations

Next, the relevant medical opinions and observations of record confirmed the ALJ's in-person observations. These opinion and observations unanimously agreed that Plaintiff had some degree of hearing loss, including:

- In December 2013, Sam Huh, M.D., a treating physician, reported diminished hearing on testing (R. 382).

- In February 2014, Richard Schiffman, M.D., consultative examiner, performed an audiological evaluation and concluded Plaintiff had a "left-sided mild-to-moderate severe downsloping neuro loss and a right-sided moderately severe-to-severe mixed hearing loss" (R. 257).

- In March 2014, Sara Atalla, D.O., performed a consultative examination of Plaintiff and noted that she had to repeat herself a few times and speak more loudly in order for Plaintiff to hear her (R. 263). Dr. Atalla concluded that Plaintiff had "moderate limitations in hearing loss" (R. 263).

- In May 2015, Dr. Huh noted Plaintiff had "significant hearing loss" on testing (R. 353).

- In August 2018, audiologist Neil Strauss opined that Plaintiff should attempt to use a new left hearing aid, and if still unsuccessful, a cochlear implant may still be a possibility (R. 902).

- In May 2019, Allen Meisel, M.D., performed a consultative examination and observed that Plaintiff was "markedly hearing impaired" (R. 846). Dr. Meisel

8

> concluded that Plaintiff was unable to hear and understand simple oral instructions and to communicate simple information or to use a telephone to communicate (R. 852). She had "marked limitations of auditory acuity" (R. 847).

- In May 2019, after a psychological evaluation, Rachel Mayers, Psy.D., recommended a hearing evaluation (R. 825). Dr. Mayers specifically noted that Plaintiff's issues with memory might be associated with her hearing loss (R. 824).

- On June 17, 2019, Silvia Aguiar, M.D., performed a complete ear examination and noted that audiological testing had shown "moderate to severe sensorineural hearing loss bilaterally with very poor word discrimination of 44% on the right" and an inability to test word discrimination on the left (R. 860). Dr. Aguiar concluded that Plaintiff had "moderate to marked limitations to acute hearing bilaterally" (R. 860).

- In July 2021, Elice Yvette Holden, A.R.N.P., an examining nurse practitioner, noted that Plaintiff's hearing was "decreased" (R. 1022).

- At the September 2021 administrative hearing, Christopher Snyder, D.O., opined that Plaintiff that had significant hearing problems, worsened by tinnitus, even though such problems did not meet or equal a listed impairment (R. 444).

None of the medical opinions or observations, in contrast, suggested that Plaintiff was malingering or exaggerating the extent of her hearing loss. For this reason as well, the Court finds the RFC determination lacks substantial support in the record.

### 3.   Speculation of Ménière's Disease

Third, seemingly as a way of minimizing the severity of Plaintiff's hearing impairment, the ALJ referenced certain testimony of Dr. Christopher Synder that Plaintiff might have Ménière's disease, which might be the cause for her dizziness symptoms. Dr. Synder testified that:

> I … look at dizziness as part of her hearing situation, and also the ringing or buzzing. When you put the hearing loss with dizziness, with ringing in the ears and decreased auditory acuity, you're really looking at something like Ménière's disease…. There was no statement of Ménière's disease in the record, which surprised me, especially given her triad of symptoms.

(R. 442).

The ALJ then pointed to Dr. Snyder's speculations in the written decision:

> Furthermore, Dr. Synder further speculated that Ménière's disease caused by her hearing impairment, which was not mentioned in the record as a reasonable cause for the [Plaintiff's] dizzy episodes, may be responsible for her complaints of vertigo in the record.

(R. 408).

To the extent the ALJ relied on this testimony to discount other record evidence, the Court finds such reliance improper. As conceded by the ALJ, Dr. Synder's testimony was speculative, and the record contained no diagnosis of Ménière's disease. Moreover, Dr. Synder never examined or treated Plaintiff; he merely reviewed the medical evidence records. As such, to the extent the ALJ relied on any testimony regarding Ménière's disease in order to formulate the RFC, the Court finds the RFC lacks substantial support in the record.

### 4. Noncompliance with Prescribed Treatment

Finally, the record showed Plaintiff had two possible treatment options to improve her hearing: (1) cochlear implant surgery, which she refused due to a fear of surgery (R. 442-43), and (2) hearing aids, which she refused because they caused or worsened her migraines as well as ringing in her ears (tinnitus) (R. 439, 443). The ALJ pointed to this refusal of treatment as grounds for his decision, but did so in an inconsistent manner that makes the ALJ's decision difficult to review. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (ALJ's failure to "provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.").

On the one hand, the ALJ reasoned as follows:

> [I]t is noted that [Plaintiff] has refused cochlear implant surgery due to fear and she also refused use of a hearing aid because of subjective complaints that it made her migraine headaches worse. The record does not indicate that the *claimant has met her burden of proof to demonstrate good cause* for not following the prescribed treatment.

10

(R. 408) (emphasis added). This finding seems to mirror 20 C.F.R § 404.1530, which allows the denial of benefits to a person who suffers from a disability but fails, without good reason, to seek treatment that can restore the ability to work. This section provides:

> (a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work.
>
> (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment *without a good reason*, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R § 404.1530 (emphasis added); *see also* Social Security Ruling ("SSR") 82–59 (Titles II and XVI: Failure to Follow Prescribed Treatment).

The underlying premise of 20 C.F.R § 404.1530 is that the claimant *is disabled*. Indeed, this provision cannot be applied unless the ALJ first makes a finding of disability. *See Russ v. Astrue*, No. 3:07-CV-1213-J-MCR, 2009 WL 764516, at *8 (M.D. Fla. Mar. 20, 2009) ("[I]n order to make a proper determination of failure to follow treatment, it must first be shown Plaintiff is 'disabled' or unable to engage in substantial gainful activity."). Only then can the ALJ proceed to deny benefits on the basis that the claimant has, without good reason, refused to follow a prescribed treatment that would restore the ability to work. *Id.*

Here, the ALJ did not cite 20 C.F.R § 404.1530 or SSR 82-59, but nevertheless made findings that appear to track portions of these regulations, namely, that Plaintiff failed to meet her burden to "demonstrate good cause for not following the prescribed treatment" (R. 408). This finding would be necessary only if the ALJ believed Plaintiff to be disabled in the first instance. *See Mack v. Comm'r of Soc. Sec.*, 420 F. App'x 881, 883 (11th Cir. 2011) (noting that SSR 82–59 only applies to claimants "who would otherwise ... be found to be under a disability"). Given that the ALJ reached the issue of good cause, it appears the ALJ believed Plaintiff to be disabled, but that he denied benefits because she failed to show good cause for failing to comply with prescribed

11

treatment.

On the other hand, however, the ALJ also ruled that "[t]he claimant's treatment refusal shows that her hearing problem is not so severe that it interferes with her ability to function under normal circumstances" (R. 408). In contrast to the previous finding, the underlying premise of this finding is that Plaintiff is *not disabled*. In this regard, ALJs commonly point to refusal of treatment as grounds to discount a claimant's subjective complaints – the underlying premise being that things can't be so bad given that a claimant has not taken steps to fix them. *See, e.g.*, *Keplar v. Saul*, No. 8:18-CV-1370-T-CPT, 2019 WL 4744941, at *5–6 (M.D. Fla. Sept. 30, 2019) (approving ALJ's use of noncompliance with prescribed treatment to discount plaintiff's subjective complaints); *Crane v. Comm'r of Soc. Sec.*, No. 2:15-CV-678-FTM-CM, 2017 WL 541571, at *13 (M.D. Fla. Feb. 10, 2017) (same); *Ogletree v. Colvin*, No. 5:12-CV-389 MTT, 2013 WL 6169161, at *9–10 (M.D. Ga. Nov. 25, 2013) (same).

In short, the ALJ appears to have made two inconsistent findings. On remand, the ALJ should clarify his intent in pointing to Plaintiff's failure to follow prescribed treatment. If the ALJ intends to invoke 20 C.F.R § 404.1530 and SSR 82-59, he should first make an express finding of disability. *See Russ*, 2009 WL 764516 at *8. If, on the other hand, the ALJ intends to use Plaintiff's failure of treatment solely as a means to discount her subjective complaints, he need not invoke 20 C.F.R § 404.1530 and SSR 82-59 and need not make any findings regarding "good cause" for failing to follow prescribed treatment. *See Keplar,* 2019 WL 4744942, at *6 (noting that SSR 82–59 has no application where ALJ uses a claimant's failure to comply with treatment to discount subjective reports regarding the severity of symptoms).

### B.     Mental Impairments[2]

Plaintiff next argues that the ALJ erred at step two by not deeming her mental impairments "severe." Once again, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly*, 382 F. App'x at 825. Here, the ALJ found other severe impairments at step two (R. 407). As such, Plaintiff suffered no harm stemming from this alleged error. *See, e.g.*, *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25. Either way, the ALJ moved forward in the five-step analysis, eventually reaching the RFC.

Plaintiff's real argument rests here, namely, that the ALJ failed to properly account for Plaintiff's mental impairments, severe or nonsevere, when setting the limits of the RFC. In making the RFC determination, the ALJ must consider all of the record evidence, including evidence of severe impairments, nonsevere impairments, and any other limitations on a claimant's ability to perform work. *See Griffin*, 560 F. App'x at 842.

The Court has reviewed the record and finds no error in the ALJ's decision not to incorporate or accommodate Plaintiff's mental impairments, whether severe or nonsevere, as part of the RFC. The Court finds the ALJ's decision in this regard to be supported by substantial evidence.

To begin, the ALJ found Plaintiff's "mental impairments of depressive disorder and anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (R. 409). In making this finding, the ALJ thoroughly considered the four broad functional areas of mental

---

[2] In the interest of completeness, the Court will evaluate Plaintiff's second argument. The Court notes, however, that this argument need not be addressed if the District Court agrees with section III.A of this Report and Recommendation. *See, e.g.*, *See McClurkin v. Comm'r of Soc. Sec.*, 625 F. App'x 960, 963 (11th Cir. 2015) (finding no need to analyze other issues when case must be reversed due to other dispositive errors).

functioning ("paragraph B" criteria) (R. 409-412).  The ALJ found an overall lack of psychiatric treatment records, which supported finding a lack of severity in Plaintiff's mental impairments (R. 410-11).

The ALJ pointed to substantial evidence to support a finding mild or no limitations in each of the four areas of mental functioning (R. 409-10).  Specifically, the record supported the ALJ's findings that, inter alia, Plaintiff could handle self-care and personal hygiene, prepare meals, manage funds, go to doctor's appointments, take medications, take public transportation, shop, spend time with friends and family, live with others, attend church, provide information about her health, describe her prior work history, and follow instructions from healthcare providers (R. 172-182, 261, 264, 266-67, 483, 822-26, 831-33, 845, 854, 858-59, 867).

The ALJ gave some weight to the opinion of Rachel Mayers, Ph.D., who conducted a psychiatric evaluation in May 2019 (R. 821-29).  Dr. Mayers found that Plaintiff was oriented in all spheres, made appropriate eye contact, had full range and appropriate affect, and had coherent, and goal directed thoughts (R. 823-24).  Dr. Mayers diagnosed Plaintiff with "unspecified depressive disorder," but ruled out "unspecified anxiety disorder" (R. 825).  Dr. Mayers opined that the results of the examination appeared to be consistent with psychiatric problems, but did not appear to be significant enough to interfere with Plaintiff's ability to function (R. 825).  Dr. Mayers also opined that Plaintiff had mild limitations in understanding and remembering complex instructions and carrying out complex instructions, but no other mental limitations (R. 827).

To be sure, Plaintiff disagreed with the ALJ's conclusion below and has pointed the Court to a variety of record evidence that the ALJ might have used to reach a different RFC conclusion. On review, however, this Court cannot reweigh conflicting evidence or substitute its judgment for that of the ALJ.  *See Mitchell*, 771 F.3d at 782.  The mere fact that some of the evidence conflicted with the ALJ's conclusion does not serve as a basis for remand.  *See Moore v. Barnhart*, 405 F.3d

1208, 1213 (11th Cir. 2005) ("To the extent that [Plaintiff] points to other evidence which would undermine the ALJ's RFC determination, [Plaintiff's] contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.") (cleaned up).  The Court finds no error based on Plaintiff's second argument.

      **C.**      **Appointments Clause Error**

Finally, Plaintiff argues this case must be reversed because former Acting Commissioner Berryhill violated the appointments clause of the United States Constitution by appointing the ALJ who decided Plaintiff's case at a point in time when she no longer had authority to make such appointments.  Specifically, the Commissioner of the SSA must be appointed by the President and confirmed by the Senate.  *See* U.S. Const. art. II, § 2, cl.2; 42 U.S.C. § 902(a).  When a sitting Commissioner "dies, resigns, or is otherwise unable to perform the functions and duties of the office," the FVRA governs who may serve as an "acting" head of the SSA, subject to certain time limits.  *See* 5 U.S.C. § 3345(a).

In this case, Berryhill became the Acting Commissioner on January 20, 2017, when the previous Acting Commissioner Carolyn Colvin resigned upon the inauguration of President Donald Trump.  *See Bauer v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 2918917, at *2 (N.D. Iowa July 25, 2022) (describing the timeline of agency heads).  Berryhill assumed the role of Acting Commissioner because she had previously served as Deputy Commissioner for Operations and was thus next-in-line by virtue of President Barack Obama's December 2016 memorandum establishing an order of succession for SSA officials.  *Id.*; *see* Presidential Memorandum Providing an Order of Succession Within the Social Security Administration, 81 Fed. Reg. 96337 (Dec. 23, 2016).

On March 6, 2018, Berryhill temporarily stepped down as Acting Commissioner. *See* Letter from Thomas H. Armstrong, U.S. Gov't Accountability Off. Gen. Couns., to Donald Trump, U.S. President (March 6, 2018), https://www.gao.gov/assets/b-329853.pdf (reporting that Berryhill's initial service as Acting Commissioner extended beyond the time allowed under the FVRA). Once President Trump nominated Andrew Saul as the next Commissioner of Social Security on April 17, 2018, Berryhill resumed her role as Acting Commissioner while Saul's nomination was pending. *See Brian T. D. v. Kijakazi*, No. 19-CV-2542 (DTS), 2022 WL 179540, at *4 (D. Minn. Jan. 20, 2022) (further describing the timeline of agency heads). During this second term as Acting Commissioner, Berryhill presumably appointed the ALJ who adjudicated Plaintiff's case (Plaintiff does not specify the exact date her ALJ was appointed).

Plaintiff argues Berryhill lacked legal authority during this second term as Acting Commissioner because the FVRA imposes time limits on those "serving as an acting officer." The statute provides:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—
>
> (1) for no longer than 210 days beginning on the date the vacancy occurs; or
>
> (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

5 U.S.C. § 3346(a). Specifically, Plaintiff argues that, under subsection (a)(1), Berryhill could serve no longer than 210 days as Acting Commissioner. Because Berryhill initially served as Acting Commissioner for 210 days after former Acting Commissioner Colvin resigned, Plaintiff argues Berryhill could not resume the role of Acting Commissioner when President Trump nominated Saul as SSA Commissioner. In support, Plaintiff relies on a recent decision out of the District of Minnesota applying this logic. *See Brian T. D.*, 580 F. Supp. 3d at 615.

The Court disagrees with *Brian T. D.* Instead, the Court agrees with the majority of courts that have rejected *Brian T. D.* and instead found that 5 U.S.C. § 3346(a)(1) allows an individual to serve as an Acting Commissioner beyond the 210 days when the President nominates a new Commissioner. *See, e.g.*, *Taylor v. Kijakazi*, No. 1:21CV648, 2022 WL 4668273, at *12 (M.D.N.C. Aug. 2, 2022), *Brooks v. Kijakazi*, No. 1:21CV609, 2022 WL 2834345, at *23 (M.D.N.C. July 20, 2022); *Williams v. Kijakazi*, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *2-4 (W.D.N.C. June 15, 2022); *Early v. Kijakazi*, No. 5:21CV96, 2022 WL 2057467, at *4 (W.D.N.C. June 7, 2022); *Reuter v. Saul*, No. 19-CV-2053-LRR, 2020 WL 7222109, at *15 n.11 (N.D. Iowa May 29, 2020), *Thomas S. v. Comm'r of Soc. Sec.*, No. C21-5213, 2022 WL 268844, at *3 (W.D. Wash. Jan. 28, 2022).

Second, even if, as Plaintiff argues, Berryhill lacked authority to appoint ALJs after November 16, 2017, Plaintiff has failed to show that the ALJ who adjudicated her case was in fact appointed during this window. Plaintiff has not pointed the Court to the exact date of her own ALJ's appointment, which may well have taken place after Saul became the new Commissioner of the SSA on June 17, 2019. The claim fails for this reason as well.

## IV.   RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons set forth above, the undersigned **RECOMMENDS** as follows:

1. Consistent with the Court's ruling, Plaintiff's Motion for Summary Judgment (DE 15) be **GRANTED** and the Commissioner's Motion for Summary Judgment (DE 20) be **DENIED**.

2. The Commissioner's final decision be **VACATED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

3. Final judgment be entered in Plaintiff's favor.

The parties shall have fourteen (14) days from the date of being served with a copy of this

Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 9th day of December 2022.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE